JOHN RABEN V. FIRST NATIONAL BANK OF AURORA.

FILED JUNE 29, 1893. No. 4653.

Promissory Notes: COLLATERAL SECURITIES: EXTINGUISHMENT OF PLEDGOR'S RIGHT BY FORECLOSURE SALE: ATTORNEY AND CLIENT. A, the owner of a note secured by mortgage, pledged the note to a bank to secure an indebtedness from A to the bank. A senior mortgagee brought a foreclosure suit in which A appeared by his own attorney and filed a cross-bill. A decree foreclosing both mortgages was rendered and the land was sold to a stranger. Thereafter the bank bought the land from the purchaser, A's attorney in the foreclosure case negotiating the purchase and receiving a bonus. Later the bank resold at a profit. *Held*, That A could not recover from the bank the amount of the note out of such profits.

ERROR from the district court of Hamilton county. Tried below before POST, J.

*Sedgwick & Power*, for plaintiff in error.

*A. W. Agee* and *E. J. Hainer*, contra.

IRVINE, C.

The plaintiff in error, who was also plaintiff below, was the owner of a promissory note drawn to his order and executed by one Sparks for the sum of $374.70. This

note was secured by a mortgage upon land in Hamilton county, upon which there was a prior mortgage to the New England Mortgage Security Company for $400. Raben was indebted to the defendant bank and pledged the Sparks note and mortgage to the bank as collateral security for his indebtedness. The New England Mortgage Security Company began suit in the United States circuit court to foreclose its mortgage, making Sparks a party defendant. Mr. Alfred W. Agee held a third mortgage upon the same land. He was an attorney at law, and in that capacity represented the bank in many matters. He had also for some time acted as the attorney of Raben under an annual retainer. Mr. Agee appeared in the foreclosure case, filed an answer and cross-bill for Raben, and a decree of foreclosure was ultimately rendered, establishing the mortgages in the order above stated, and directing a sale of the premises. A request for stay was filed, and a short time after the expiration of the stay the premises were sold by the master to one John Sutton for $790, the proceeds not being quite sufficient to satisfy the costs and the New England company's mortgage. Neither Agee, Raben, nor the bank seems to have known of the issuance of an order of sale, nor to have been aware of these proceedings until after the sale had been confirmed and a master's deed made to Sutton. Agee then learned that the sale had been so made and obtained an interview with Sutton, who was until that time an entire stranger to all the parties. Sutton offered to convey the property to Agee for $200 more than the amount of his bid. Agee went to the bank for the purpose of borrowing $1,000, with which to purchase the land. Upon making his object known, one Delevan Bates, a stockholder in the bank and book-keeper thereof, suggested that if the bank was to advance the money it might buy the land for itself. Agee then proposed to give the bank the benefit of his bargain provided the bank would pay him $100. This proposition was accepted, and ultimately a deed was

executed from Sutton to Bates, Sutton receiving $990 and Agee $100, the bank advancing the money. Sometime afterwards the land was conveyed by Bates to one Larson for $1,600, the bank receiving the purchase money. Before Bates received his deed, and while negotiations were pending between Agee and Sutton, Raben and the bank effected a settlement of their accounts; Raben transferring certain property to the bank in satisfaction of all his indebtedness thereto. Raben claims that this settlement was made without any knowledge on his part of the pending negotiations between Sutton, Agee, and the bank, and there is no evidence to show the contrary. Raben brought this suit seeking to recover from the bank the amount of the Sparks note with interest. There was a general finding and judgment for the defendant.

In addition to the foregoing facts, which are very clearly established, Raben claims that Agee was, in the foreclosure case, acting as the bank's solicitor, and that both Agee and the bank assured Raben that the bank would collect the Sparks note out of the security and that Raben need pay no attention to the matter. The bank denies this. The clear preponderance of the evidence is that the bank undertook no obligations in the foreclosure case; that Agee's employment was on behalf of Raben alone, and that the note and mortgage were delivered to him by the bank only to permit him to enforce Raben's rights. On the part of Raben his testimony is that officers of the bank told him he need pay no attention to the sale; that they would attend the sale. His testimony goes no farther than this. The officers of the bank on the contrary testify that they made no promises and assumed no duties whatsoever, but left the whole matter of protecting the mortgage to Raben himself. The findings of the trial judge are clearly sustained by the evidence. Upon this state of facts and these findings the only question is whether the bank could purchase the property for itself without accounting to Raben

for the amount of the note out of the profits realized by it.
It may be that had the bank purchased the property at the
foreclosure sale it would be held to treat the property
merely as collateral to the debt under the same terms that
it had before held the mortgage, but that state of affairs
does not exist.   The bank was not bound to bid on the
property at the sale.   The property was sold to a stranger
whose title to it was perfected, and the whole interest of
both Raben and the bank had become completely divested
before Agee's negotiations with Sutton took place.   The
question of the bank's power to invest its funds in real es-
tate in this manner has no bearing upon this case.   It does
not appear that the purchase was made with any reference
to the relations between the bank and Raben; on the con-
trary it appears that the officers of the bank considered it
as an entirely independent transaction, and were moved
only by the consideration that it would be more profitable
for them to buy the land themselves, paying Agee his
bonus, than to lend Agee the money wherewith to make
the purchase.   We know of no principle of law holding
even a trustee to accountability for profits realized by him
through the purchase and sale of property, once held by
him in trust, where the trust had been completely termi-
nated and the interest of the *cestui que trust* been divested
by a prior sale to a stranger, without any collusion of the
trustee.

The difficulty seems to have grown out of the conflicting
relations between Agee and the parties.   The rights exist-
ing between him and his client are not before us for deter-
mination.   We do not wish to say that Mr. Agee's course
was improper, but the fact that he not only was interested
in the property himself, but also undertook to act for Ra-
ben in a matter where Raben's interests might not prove
identical with those of the bank with which he was also
closely associated, presents a situation which is unfortunate
at least.   The case shows what extreme caution should be

observed by an attorney in dealing in any manner with property in which his clients are interested. Judgment

AFFIRMED.

THE other commissioners concur.